448 P.2d 59

**STATE of Arizona, Appellee,**

v.

**Robert Lee JENNINGS, Appellant.**

No. 1861.

Supreme Court of Arizona.

In Banc.

Dec. 11, 1968.

Opinion on Rehearing Feb. 4, 1969.
See 449 P.2d 938.

Darrell F. Smith, then Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by Grant Laney, Deputy Public Defender, for appellant.

McFARLAND, Chief Justice:

Defendant Robert Lee Jennings, hereinafter referred to as defendant, was charged with the crimes of possessing a forged promissory note or bank bill, with a prior

conviction, Cause No. 50896; with receiving stolen property, Cause No. 51159, with a prior conviction; and with grand theft with a prior conviction, Cause No. 52138, in the Superior Court of Maricopa County of the State of Arizona.

Defendant originally entered pleas of "not guilty" to the above-listed three charges, but later changed his plea to "guilty" on the three charges with the prior conviction. He was also charged under five other counts—Nos. 51976, 51796, 52092, 52137 and 52431. And there was a charge pending against him in the justice court. In the other cases he had likewise entered pleas of "not guilty". When he changed his pleas as to the first three cases from "not guilty" to "guilty", the county attorney moved that the five remaining charges in the superior court be dismissed, and stated that the case in the justice court would be dismissed.

■ Defendant now contends that certain "tactics" used by the county attorney "coerced" him into changing his pleas, and therefore the superior court was wrong in allowing the change in pleas. The device used by the county attorney's office is known as "plea bargaining". Its ideal purpose is to prevent the necessity of trial if an alternative can result in justice to society and the accused. In an Oregon case, Barber v. Gladden, 220 F.Supp. 308, 314, the court stated:

"It [plea bargaining] is an integral part of the administration of justice in the United States. It is used not only by lazy prosecutors, but also by conscientious ones to prevent the imposition of minimum sentences which either the prosecutor or the defendant's lawyer, or both, believe will be unconscionably long."

In speaking of the benefit which "plea bargaining" can confer upon a defendant, the 9th Circuit in Cortez v. United States, 337 F.2d 699 (1964), stated:

"* * * most guilty pleas are the result of a 'bargain' with the prosecutor * * * A guilty defendant must always weigh the possibility of his conviction on all counts, and the possibility of his getting the maximum sentence, against the possibility that he can plead to fewer, or lesser, offenses, and perhaps receive a lighter sentence. * * *"

"Plea bargaining" is not extensively commented on in Arizona cases. However, it has been at least tacitly accepted in State v. White, 102 Ariz. 18, 423 P.2d 716; and State v. Maberry, 93 Ariz. 306, 309, 380 P. 2d 604. Appellant's opening brief charges that "the County Attorney was using coercive tactics to force from the defendant a plea of guilty."

■ We are of the opinion that the better rule is to permit "plea bargaining" where the rights of the defendant are protected. Frequently, a defendant may feel that he has such mitigating circumstances in his case that he is better off to bargain with the county attorney for a recommendation of a lesser charge and thereby place himself on the mercy of the court in regard to the sentence, or, he may be able, as in the instant case, to get a number of other charges dismissed and rely on being rehabilitated in the penitentiary. The reasons behind acceptance of "plea bargaining" are set forth in the case of Commonwealth ex rel. Kerekes v. Maroney (1966), 423 Pa. 337, 223 A.2d 699:

"Realistically, however, plea bargaining, when surrounded by proper safeguards, is frequently in the best interest of both the Commonwealth and the accused. See United States v. Von Der Heide, 169 F. Supp. 560, 565 (D.D.C.1959); Polstein, How To 'Settle' A Criminal Case: The Art of Negotiating Lesser Pleas and Sentences, in The Problem of a Criminal Defense (ALI ed. 1961); Newman, Pleading Guilty for Considerations: [A Study of Bargain Justice], 46 J.Crim.L., C. & P.S. 780, 789–90 (1956); Note, Guilty Plea Bargaining: Compromises by Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 878–82 (1964). From the Commonwealth's viewpoint the inability to bargain would lead to a substantial increase in required prosecu-

torial manpower and in the number of necessary trials, even though a satisfactory resolution of the state's interest can often be obtained with less than the potential maximum punishment available. "From the accused's viewpoint, the abolition of plea bargaining might be disastrous, for there would then be little incentive for the state to acquiesce in less than the maximum available punishment. One can readily understand why a defendant, who has no doubt about the ability of the Commonwealth to prove its case would be willing, in exchange for some concessions by the Commonwealth, to plead guilty, thus saving the state the expense of a protracted trial. Even when the evidence although not overwhelming, is more than sufficient to sustain a conviction, it may well be in the defendant's best interest to plead guilty rather than to gamble and lose, when losing may result in the deprivation of liberty for an extended period of time or the death sentence. See McCoy v. United States, 124 U.S.App.D.C. 177, 363 F.2d 306, 308–309 (1966)."

While "plea bargaining" is recognized, a guilty plea procured by "fraud or duress" is ground for setting aside a judgment on the plea of guilty. State v. Murray, 101 Ariz. 469, 421 P.2d 317; and Silver v. State, 37 Ariz. 418, 423, 295 P. 311. Pleading guilty is the same as if defendant had been tried before a jury and been found guilty. State v. Alford, 98 Ariz. 249, 403 P.2d 806; State v. Anderson, 96 Ariz. 123, 392 P.2d 784; and State v. Fry, 95 Ariz. 68, 386 P.2d 794. Thus, once the plea is made the court has only to determine whether the plea is voluntary. Benton v. United States, 9th Cir., 352 F.2d 59. It is well understood that any plea which is involuntary is of course void.

The courts are careful to see that the plea of guilty is made voluntarily, after proper advice and explanation by the court with a full understanding of its consequences. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Scott v. United States, 6th Cir., 349 F.2d 641, 643; and Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91. The question, then, in the instant case, is whether defendant was properly advised of his rights by counsel and by the court and whether there was a proper understanding by defendant of what could happen as a result of his guilty plea.

In determining this we must look at the record. In all three charges defendant was asked if he desired to change his plea, to which he replied that he did. The defendant was asked if his plea of guilty included admission of a prior conviction, and if he admitted the prior conviction. His answer was in the affirmative. He was then asked if he had discussed the matter of pleading "guilty" with his counsel, to which he replied that he had. He was asked if he understood the possible sentence that might be imposed if he pleaded guilty. His answer was in the affirmative. Then the possible sentence in terms of the maximum and minimum was stated to him; for example, in the grand theft charge "it would be ten years to life." He replied that he did. He was asked if there had been any promise of leniency or reward, or anything of that nature. The answer was "no." The court then permitted his withdrawal of the pleas of "not guilty" and permitted the pleas of "guilty." The record also shows the following proceedings:

"Then I understand that the County Attorney is going to dismiss some seven or eight other charges. Is that correct?

"MR. WAMACKS: Five charges, your Honor. We will make the record that the County Attorney's office will dismiss Cause Nos. 51976, 51796, 52092, 52137, and 52431.

"MRS. BAILEY: I believe also there is a charge that has been held to answer in Justice Court, but there has not been an information filed on it as yet, but that one will be dismissed, also.

**6**

"MR. WAMACKS: I believe this is the 52431. You are referring to the burglary charge.

"THE COURT: In any event, all pending charges will be dismissed?

"MR. WAMACKS: All pending charges will be dismissed.

"THE COURT: The dismissal of these other charges had nothing to do with your entering a plea of guilty in these cases? It isn't that leniency that made you want to plead guilty to these?

"MR. JENNINGS: Well, to a certain extent, yes.

"THE COURT: To what extent would that be?

"MR. JENNINGS: I was looking at the possibility of all cases—

"THE COURT: I am sorry, I didn't hear you.

"MR. JENNINGS: I was just looking at the possibility of all the cases and not knowing, you know, just what would happen in the other cases, I would take these three here.

"THE COURT: Well, to understand your state of mind, I mean are you pleading guilty to these just because the County Attorney is going to dismiss the others, or are you pleading guilty to these because there are so many charges?

"MR. JENNINGS: Yes, because there are so many charges.

"THE COURT: And you are admitting all the statements of the charges, that is, the allegations against you in these three cases you plead guilty to, is that correct?

"MR. JENNINGS: Yes.

"THE COURT: All right, I think that is sufficient."

■ It is plain that defendant was properly advised—both by his counsel and by the court—and that he voluntarily entered his plea of guilty to each of the three counts, feeling that it was to his advantage to rely on the recommendation of the dismissal by the county attorney of the other charges rather than to go to trial on all

of them. His counsel evidently felt that after going into the evidence of the case and determining his chances of defendant's acquittal this procedure was to his client's advantage.

Judgment affirmed.

UDALL, V. C. J., and BERNSTEIN, STRUCKMEYER and LOCKWOOD, JJ., concur.